## Cook *et al. versus* Mackrell *et al.*

1. Johnson, wishing to be appointed a sequestrator, employed Mackrell, a lawyer, to conduct the proceedings in the Common Pleas. The petition was signed by a number of others, some of whom spoke to Mackrell and urged him to press the proceeding. *Held*, that this was not evidence of a promise by the others to pay.

2. Mackrell declared against seven on a joint contract; there was *no* evidence in relation to three. *Held*, that the action could not be maintained.

3. In answer to a point, that under the pleadings the plaintiffs could not recover, the court charged, "We leave the liability or non-liability of these defendants to be discovered and determined by the jury from all the facts of the case." *Held*, that this left to the jury to determine both the law and the facts, and therefore was error.

October 11th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 131, to October and November Term 1870.

This was an action of assumpsit brought January 11th 1867, by H. C. Mackrell and S. A. Johnson, partners, for the use of H. C. Mackrell, against J. W. Cook, Henry Eaton, R. F. Smythe, J. H. Oliver, Robert W. McPherson, John H. Miller, David Sample, T. MacConnell and Eli Neeld.

The plaintiffs declared against the defendants jointly, that the plaintiffs, being attorneys at law, had been employed by the defendants to prepare an application and conduct other legal proceedings in the Court of Common Pleas for the removal of one James Blackmore from the office of sequestrator of the Washington and Pittsburg Turnpike Road Company and procure the appointment of Robert Johnston; that the plaintiffs performed their duty as attorneys in that behalf; that their services were worth $500, which the defendants promised to pay, but had refused, &c.

On the trial before Kirkpatrick, J., February 15th 1870, Mackrell, the plaintiff, testified that his partner Johnson had put into his hands a petition for the removal of Blackmore and the appointment of Robert Johnston as sequestrator; that he subsequently saw Cook, Smythe and Eaton, three of the defendants, who told him to proceed and have Blackmore removed. The petition being defective, Mackrell prepared another, which was sworn to by Neeld, another defendant; after proceeding in the case and performing a considerable amount of labor, a compromise was proposed, which Cook advised Mackrell to accept. Johnson,

[Cook *v.* Mackrell.]

the other plaintiff, testified that Oliver, another of the defendants, had been in the plaintiff's office about the business. There was no evidence that any other one of the defendants than those mentioned in the above testimony had consulted with the plaintiffs or had spoken to them at any time about the business. The petition was signed by about seventy persons, including the defendants. The plaintiffs sent bills to the different signers of the petition and collected one of them.

The defendants gave evidence in conflict with that of the plaintiffs; also that some of them had no interest in the proceeding, but had signed at the request of Robert Johnston, the applicant for the appointment of sequestrator; that no one but he was concerned in the employment of the plaintiffs, and that he had paid them $15, the amount of the bill they presented to him.

The defendants' points and the answers, which were the only errors assigned, are as follows:—

4. If the jury believe the evidence for the defence, plaintiffs cannot recover.

Answer: "Refused. We leave the liability or non-liability of these defendants to be discovered and determined by the jury, from all the facts in the case."

5. Under the pleadings, the plaintiffs cannot recover, and your verdict must be for defendants.

Answer: "Refused."

6. The plaintiffs, in electing to charge the signers of the petition in the proportions in which they—plaintiffs—thought each signer was benefited by their services, plaintiffs are debarred from recovering from each defendant more than the specific sum charged in the bill sent to each defendant.

Answer: "Refused. The jury have heard all of the testimony in regard to the separation of bills, and we leave it to them to discover what was intended by the manner in which these bills were sent."

The verdict was for the plaintiffs for $250. The defendants removed the case by writ of error to the Supreme Court.

*C. S. Fetterman* (with whom were *F. M. Magee* and *T. M. Marshall*), for plaintiffs in error.—There was no evidence of any contract between the plaintiffs and defendants. The declaration was on a joint contract, and as to some of the defendants there was no evidence of any connection whatever between them and the plaintiffs. Without proof of a joint contract, there could be no recovery: Fagely *v.* Bellas, 5 Harris 67; Nutz *v.* Reutter, 1 Watts 229; Wilson *v.* Bank, 5 Casey 537; Boggs *v.* Curtin, 10 S. & R. 211; Lee *v.* Gibbons, 14 Id. 105; Rowan *v.* Rowan, 5 Casey 181; Schoneman *v.* Fegley, 7 Barr 433; Corbet *v.* Evans, 1 Casey 310; Swanzey *v.* Parker, 14 Wright 441; Locke *v.*

[Cook *v.* Mackrell.]

Daugherty, 7 Wright 88; City *v.* Reeves, 12 Id. 472; 1 Sanders' Pl. & Ev. 177. Johnson was the employer, and an action would lie only against him: Pinchon *v.* Delaney, 2 Yeates 22.

*Hampton & Dalzell,* for defendants in error.

The opinion of the court was delivered, October 23d 1871, by

Read, J.—The declaration sets out a joint contract by the defendants to pay the plaintiffs below for their services rendered in applying to the Court of Common Pleas of Allegheny county, for the removal of James Blackmore as sequestrator of the Washington and Pittsburg Turnpike Road Company, and prosecuting the same. The facts of the case are few. There was dissatisfaction with Blackmore on account of the state of the turnpike road, and Robert Johnston, an old gentleman of seventy years of age, desired to be appointed in his place. He prepared a petition for the removal of Blackmore, got some signatures and handed it to S. A. Johnson. The plaintiffs took the names off this petition which Robert Johnston had got the signatures to himself and put them on another petition, which they said was worded better. There was no re-signing of this petition. Johnson the plaintiff went down and got more names to it, though Johnston paid the plaintiffs fifteen dollars, the amount of the bill they presented him. This petition was signed by seventy persons, and sixty-two persons signed another petition for the appointment of Johnston.

The seven plaintiffs in error were sued as joint debtors upon this alleged joint contract, but there was no evidence to prove it, and in fact no evidence that any one of them did assume or promise to pay the plaintiffs, and as to three of them, McPherson, Miller and MacConnell, their names were not even mentioned on the trial by any one. There was no evidence of any kind against them. It is clear, therefore, there was no evidence permitting the court to submit the question of the joint liability of the defendants to the jury.

The court refused the 5th point, "That under the pleadings the plaintiffs cannot recover, and your verdict must be for the defendants;" and the 4th point, "That if the jury believe the evidence for the defence, plaintiffs cannot recover," was answered "Refused. We leave the liability or non-liability of these defendants to be discovered and determined by the jury from all the facts of the case." Thus throwing upon the jury the responsibility of determining the law as well as the facts. It is certain three of these defendants were not liable at all, and if so, the whole were not liable, and under the pleadings the plaintiffs could not recover.

It is a case in which the court should have said to the jury, your verdict must be for the defendants.

Judgment reversed, and *venire de novo* awarded.